All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon, everyone. We have a rather full docket this afternoon, as we did this morning, so if you're appellant and you come up to argue that you'd like to reserve time, tell us and we'll put it in the bank so you don't run into it. The first case on for argument today is the Confederated Tribes and Bands of the Yakama Nation v. the United States. Are counsel ready? Okay. Mr. Zeelman. Is this loud enough? You bet. Your honor, we would like to reserve time. How much? Five minutes. Okay. Put ten on the clock. Go right ahead. Good afternoon and may it please the court. My name is Tom Zeelman representing the Yakama Nation and Kay Wolfsberger, the plaintiffs in this case. I would first like to briefly update the court that the United States Court of Appeals for the Ninth Circuit has decided the court regarding the related administrative appeals that are a factual issue in this case that are pending within the Interior Department. The facts in that are important. I think they could hear you down in Tacoma, so if you'll just lean back a little bit, we'll be just fine. You don't have to adjust that. You're fine. Go ahead. Is that good? That's fine. Anyway, these facts are relevant to the questions before the court, especially the issue of whether the Yakama Nation appealed the BIA Regional Director's decision on the Guadalupe Irrigation Project's 2006 operation and maintenance bills. Can I just ask you, do you have a final decision out of that administrative appeal? We have a decision by the Regional Director. Is that the one that we have in the record? That was in the record. Okay. And is there another one? I just want to make sure. Is there another decision you're talking about or are you talking about the one we have in the record? We have briefed that decision before the IBIA, and we are awaiting a decision by the IBIA. We have received another decision regarding the 2007 bills that we just got recently. I think the date on that was August 1st or something like that. But that's not been provided to the court. No. And is that what you're about to talk about? No, I just wanted to update you to tell you that that was what was, that we had received that decision. It essentially says the same thing as the previous decision that you have. There's not much difference. But the Regional Director's decision of July 2007, which is new, sort of new to the record, because that was not before the district court, is that correct? That's correct. Okay. But this is, this does go to the heart of, this is the heart of the complaint here. Is that right? This is the Well, we are contending in the district court that the regulations to which they refer when they are billing us are invalid as exceeding statutory authority. The issue in the decision that the Regional Director made was whether the statute applies to these bills. They have taken jurisdiction over that issue. They have not taken jurisdiction over the issue of whether the regulations are consistent with that statute or whether they exceed the authority of that statute. So the vacated decision, because there was a decision that was vacated, correct? That's correct. Is that, does the August 2008 decision, in effect, supersede that? Or are they parallel and independent? It is independent because there were bills from 2000 that have not been referenced in the new decision. We have, it was specifically applied to the 2007 bills. So the 2000 appeal that we have pending has not been, there's been no Regional Director decision on that. So the vacated decision remains vacated. Remains vacated and is not compensated. No final agency action there. That's correct. But there's a new twist. We now have 2008 bills that we have appealed in April of 2008. So there is another appeal pending before the Regional Director. But that's not all. We have been receiving, over the summer, even more bills for 2008, some of which are final notices for bills that we've already appealed. So there's about, I'd say a dozen and a half parcels of land that were billed again as saying that, you know, you have a final notice and you need to pay, otherwise we're sending you to collection. So we had to re-appeal those notices and say, look, we've already appealed them. So we are getting now hit with even more bills, some of which have already been appealed over the summer. We don't know how many more we're going to get this year. But based on what's happened so far, we're predicting that we're going to get more, not only for 2008, but again for 2009, if we don't have a decision either by this Court or the IBIA by then. In fact, if the IBI waits another two years for the decision on the 2006 bills, we may get two more rounds of bills for 2009 and 2010. They don't stop billing us. That's the problem here. We are continually getting hit with bills, despite the fact that these issues are on appeal. And Can I just step back? At some point, to get a decision, though, don't you need a final agency action? We believe, and we're contending, that the agency does not have jurisdiction and the agency is acknowledging that it does not have jurisdiction over the issue that we presented to the Court, which is that the regulation on which they are basing their authority. Now, they made a decision on the merits on that in their 2006 appeal, which was decided in 2007, and also the most recent decision was the same. They said that the statute didn't apply. However, they did not address the issue of whether the regulations are valid or not. If they were to decide, if the agency were to decide that the money was not owing, for whatever reason, then you wouldn't have any reason to challenge the regulation, would you? Well, it depends on whether they're going to keep billing us or not, I guess. Well, I understand. But as long as they determine that bills are not owing, you don't have a problem with the regulation. What does the regulation do to you if you don't have any bills to pay?  Once a bill goes through this process and you have pursued it through the Department of Interior as far as you can, and they tell us that this is a final bill and we're going to turn it over to a collection agency, then you know at that point that you don't have any other remedies except for court assistance to do away with the bill. Well, that's correct. What we're contending here is that the fact that they keep billing us, even for ones that we've already appealed, creates a situation where we're always having to look out for new bills and appeal them to protect the tribe's rights. But the thing is coming here, I mean, I understand the practical problem you have, but you basically, in effect, want an advisory opinion that would short-circuit the administrative level because we don't have the vacated decision hasn't been re-decided. So until that's decided, we don't have a final agency action. So instead, we would be deciding in the abstract on a regulation that had not yet been adversely applied in any final way to you. Correct? Well, only the 2000 bills and pre-2000 bills have been remanded. The ones that were 2006 and 2007 are being decided. The IBIA has the 2006 bills in their hands. But they haven't yet been decided. Well, they have decided that they don't have jurisdiction over the issue that, or over one of the issues that we're bringing to the BIA. And that was when we decided. One of the main issues here, and honestly, the reason why we decided that we had to tell our client to file a court action was because we were afraid that the statute of limitations was going to run out. Because when we filed the... Statute of limitations on what? On the 2000 bills. But those bills are still pending before the agency. But they weren't at the time. At the time that we filed the court action, they had not been remanded yet. So you filed it as a protective... We filed it as a protective... There's no tolling agreement in effect? Excuse me? There's no tolling agreement for any of the... No, there's no tolling agreement. But we decided that in order to protect the tribe's rights to go into federal court, that we were going to file this court action because we were afraid that we would be down the road and all of a sudden the government would argue that the statute of limitations had run out. Now, granted, they've already argued that based on what's happened already. But we are arguing that, and this is another issue that came up when we pled in the pleadings that up until the mid-80s, there had been a different practice by the BIA. We weren't arguing that the first bills we got were in the 1980s. Some other people got bills back then, but the tribe did not get bills since the 80s. The first bills that the tribe received was in 2000. And so when we were going to... Or when we were told by the regional director that there was no jurisdiction by the BIA over this one particular issue, and actually there were two issues at the time, but now we're just retaining one, we are not going to be pushing the procedural issue of the 1960 memorandum. But we are going to be pushing the substantive issue of whether, as applied to my client, those regulations are invalid as exceeding statutory authority.  That's correct, but we are... Okay, let's stop and figure out what's correct about it. Until there's an application, there's an abstract as applied argument, but there is no as applied in fact, correct? Well... In the final sense. But as applied, it would be mainly an issue of statutory interpretation. It would be a question. I mean, the only facts that we would be talking about is, you know, what is the legislative history? You know, those types of issues would come up. But the facts, you know, that we would have, you know, in a case that we have on appeal with the BIA probably would not be all that relevant. We would be basically saying that there's nothing in the regulation that conditions the application of that regulation based on whether a tribe or tribe... It's a ripeness issue then. I mean, you're sort of moving now, we've moved from final agency action over into a ripeness arena problem. Well, yeah. We are contending that the final agency action was made when they decided not to take jurisdiction. And there's very little evidence that the IBAA would rule any different. But the bottom line is, you've been living with this statute and you've been living with these regulations for a long, long time. Since the 70s, but they were never applied. That's correct. And so now we have an application and we don't have a final decision from the agency. We don't have any guarantee that the agency is actually going to apply this bill to you. Well... You strongly suspect they're going to. I strongly suspect they're going to. We're not fooling each other. But until they actually do it, we don't have... You don't have a bill. Well, there's other issues here, though, because if they keep billing us, eventually we're going to screw up and miss a bill. All it's going to take is one bill for which the agency says, we're done with this issue, this is the bill, and you're back in federal court. Well, the way that we are looking at this is that the BIA basically will not leave us alone until the BIA or until the IBIA has made a decision. I think we understand your argument. You're about two minutes into your reserve time. Okay. Your Honor, the statute of limitations has also been an issue in this case. The U.S. is arguing that the tribe's claim is barred by the applicable statute of limitations. We are going to be, like I said, one reason why we filed it was because of the statute of limitations. We are arguing that the Wind River case applies here, and this is an as-applied challenge. However, even if you look at it as being in 2001, being the agency, the final agency proceeding that decided that issue, we filed in April of 2006. Now, on the issue of rightness, if the court decides to affirm the ruling of the court below, we are asking to remand the case to the district court for a stay. So we would like to get a stay on this issue so that that would be the best result, we feel in this case, would be the best accommodation of the government's interest, the tribe's interest, and so forth. And in conclusion, we're asking the court to do that, to reverse the decision of the court below and to issue basically or order the court to issue a stay in this case. Okay. Thank you. Thank you. You have some rebuttal time. What does he have left? Two minutes. Okay. We'll hear from the United States at this time. Mr. McFadden. May it please the Court. My name is Lane McFadden. I represent the United States of America. As Judge McKeown pointed out, they are essentially asking for an advisory opinion to short-circuit the administrative process. What is a final agency action is defined at 5 U.S.C. 704 as the relevant section of the Administrative Procedure Act, and it empowers Federal agencies to determine by rule which part of their internal administrative procedures are judicially reviewable. Isn't there some way you folks could get together and sort of put this thing in place while the agency matters reach finalization where you're not peppering them with bills and they agree that you're not waiving your right to send bills if they're appropriate now or in the future? Isn't there some way to arrive at a stipulation to sort of calm things down and let the water flow to the end of the dam at the Bureau of the Department of the Interior? Isn't there some way to do that? Well, Your Honor, there may be. The parties have just been nearly four years trying to settle this matter during which all of these I'm not talking about settling on the matter. I'm talking about some methodology through stipulation or otherwise that simply puts everybody at ease on the assertion of their rights and then lets the thing flow through to a final agency because once there is one of those up or down, then a court can rule on it. The agency will know where it stands. The Yakima will know where they stand. Why can't that be done? Well, Your Honor, we're open to talking about that type of stipulation. I wasn't privy to the settlement agreement, so I don't know whether this specific matter was discussed. But we'd be happy to be approached by the nation and talk about something to work that out. Well, it seems to me like a tolling agreement or something would make perfect sense because every time you send out one of these bills, you know, they're at risk for liability and either they pay up or they have to file a lawsuit, which seems kind of silly because everybody wants the answer to the same question. That's right. And, you know, if you're correct that there's no agency final action and if you're correct that it can't be decided here, unless there is a stay-in-place or a tolling agreement, then they're at the same kind of jeopardy. Do you agree? Yes. I mean, I agree that as long as they believe the bills are invalid, they're going to have to keep filing administrative appeals. I mean, hopefully as the IBAA does have this exact legal issue briefed before it now and has for I think a couple of months at least, hopefully that decision will come out and that, of course, will be a final agency decision. Do you have any additional information or light to shed on when the IBAA is going to decide this? No, Your Honor. Unfortunately, I don't. I asked several BIA attorneys this and they said that it, like any other court, could be a matter of months to a matter of a year or two. Unfortunately, they didn't know any better than I did. So I can't posit for a fact that this decision will come out before the March 2009 billing cycle, for example. In terms of Your Honor's request that we talk to the nation about perhaps tolling those billing cycles, I mean, that's certainly something the BIA would be willing to talk to you about. And I'd invite, well, I'll mention it again later, but I'd invite that conversation. But until then, there simply is not an action by the agency reviewable on this matter. And absent that, it's a question. There are sort of three interlocking doctrines that are sort of swirling around in the briefs. One was the doctrine of exhaustion. One is the doctrine of final agency action, which depends on APA Section 704. And the third is an Article III doctrine, which is the doctrine of ripeness. Does the Department have a view as to which of those is whether there's a preference in the order in which a court might approach those doctrines? Certainly, the final agency action question is the sort of the first threshold question. Why? It's an express limitation on the subject matter jurisdiction of the court established by Congress. The statute is quite clear that only final agency action is reviewable, and it also defines final agency actions. It defines it and then provides unless otherwise defined by agency rule. And the agency rule here is 25 CFR 2.6a. Why isn't exhaustion a preferable grounds on which to decide this? Well, Your Honor, in this situation, they're very closely related, as the final agency action limitation is essentially a codification of the exhaustion doctrine. This Court, of course, held in Anderson, as was pointed out in the reply brief, that a similar Department of the Interior regulation was not jurisdictional, relying on a series of cases of, based on the Prison Litigation Reform Act, gone back and forth on that issue, which have changed since Anderson came out. But, you know, as a result of that decision, I think it's easiest in light of this that the final agency action rule is the rule which applies, and you would then turn to exhaustion because a lot of the same elements of that apply in determining what's a final agency action. I mean, unfortunately, those two are so closely interrelated in this setting, it's difficult to talk about one without hitting on the elements of the other. Okay. I think we understand where you are. Okay. We'll hear again from the Yakima. Very good. Thank you, Your Honor. Thanks for coming in today. Appreciate it. Before you start the clock, is there any reason that you can't sit down after this proceeding this afternoon and see if you can come up with some kind of tolling agreement or stipulation to simply put matters in place calmly, quietly, without either side losing any rights they may have, and let this thing proceed to a final determination? Because that's what both sides want, isn't it? That is correct, Your Honor, and I was actually going to say that. Everyone wants to have a decision on the merits on this, and that's one reason why we're insisting that we go to federal court, because it seems like the BIA is incapable of making a decision on the merits in this case. And not only that, but the bills just keep coming. They won't stop. And so we would like to come to an accommodation. And, I mean, I will talk to the Justice Department about this, because this is important and this is important to get this thing resolved. I think we would encourage you to do that. Yeah. Go ahead and start the clock if you've got something substantive you'd like to  Well, here's an issue that we would like to raise with the court. We did have another appeal regarding construction bills from the WAPT irrigation project that we received, I think, in 2005 or 2006. I can't remember. But that was decided by the regional director as well, and it was a purely statutory construction issue. There were no real facts involved. There was very little factual record involved in that. We brought it up to the Interior Board of Indian Appeals, I think, in 2006 or something like that, late 2006, and it was briefed. And we've been waiting a year and a half from the IBIA for that decision on the construction bills that merely involved an issue of a purely legal issue of statutory construction. So in this other case with the O&M appeals, we've got a big factual record, at least involving some of the issues. And the IBIA is now going to be deciding that, and who knows how long it's going to take for that, three years, four years? Well, as long as you don't have to pay. I mean, I recognize there are some budget and projection issues, but as long as you don't actually have to pay and you come to some accommodation with the Justice Department, then it's not a big problem, correct? We're hoping that we can come to an accommodation. But the other issue also is that they've issued new regulations, and those were issued in March. And we're still not happy with those regulations. So we may be starting this thing all over again in federal court based on the new regulations. Let me just throw out this one possibility. If you can't reach an accommodation that makes common sense in light of the comments from the various members of the court, both sides are welcome to contact our mediation group. We're often very successful in talking with both sides about various issues. Right. I have worked with Chris Geltz here in Seattle on some other cases, and we have resolved some of those cases with Chris. I don't know if that's who you were referring to. Well, you'd just talk with either or just call our central mediation office in San Francisco, and they would assign a mediator to you. They're quite good at what they do. Okay. Thank you for coming in today. The case just argued, such as it is, is submitted. We'll proceed to the next case on the argument calendar, which is the United States v. Haidt.
judges: Hawkins, McKeown, Bybee